Stephenson, J.
 

 As this proceeding involves the constitutionality and construction of Sections 687 and 687-2, General Code (115 Ohio Laws, 3), they are set out at length:
 

 Section 687: “If upon examination, the superintendent of building and loan associations finds that the affairs of a domestic building and loan association are in an unsound or unsafe condition, or that it is conducting its business in whole or in substantial part contrary to law, or failing to comply therewith, or that its affairs are not being conducted for the best interests of its depositors, shareholders or creditors, he may, with the written approval of the director of commerce, forthwith take possession of the business and property of such building and loan association.”
 

 Section 687-2: “The domestic building and loan association named in the title of the proceedings provided for in section 687-1 of the General Code may within seven days after the filing of notice, pursuant to sub-paragraph 3 of said section, make application to such court for an order requiring the superintendent, within such time, not exceeding fifteen days, as may be fixed by the court, to file therein a bill of particulars specifying the ground or grounds named in section 687 of the General Code on which he has taken possession of its business and property and the operative facts found by him with respect thereto. If the superintendent does not comply with such order within the time fixed therein such liquidation proceedings shall be dismissed. Within fifteen days after the filing of such bill of particulars, the association may file an answer and cross petition in such proceedings joining issue on the allegations set forth in the bill of particulars. If issue is so joined, the court, or a judge thereof in vacation, shall set the proceedings down for immedi
 
 *40
 
 ate hearing upon such issue or issues. If the court finds that the bill of particulars is insufficient in law or that the superintendent of building and loan associations has exceeded or abused his power and discretion, the court shall dismiss the liquidation proceedings and direct the superintendent to surrender its business and property to such building and loan association; and the decree and order of the court shall operate to revest the title of all such property in such building and loan association as of the time therein specified. An appeal may be taken from the final order of the court as in other chancery cases. An appeal by the superintendent of building and loan associations from a final order dismissing such proceedings shall operate as a supersedeas thereof. The perfecting of such an appeal by such superintendent shall be governed by section 12227 of the General Code.”
 

 The Court of Appeals refused to entertain the appeal of the Superintendent of Building and Loan Associations, on the ground that Section 687-2, General Code, was violative of Section 6, Article IV, of the Constitution of Ohio.
 

 This section of the Constitution provides, in part: “The courts of appeals shall have * * * appellate jurisdiction in the trial of chancery cases.”
 

 In arriving at its conclusion that Section 687-2, General Code, was unconstitutional, the Court of Appeals was obliged to find that the proceeding provided for in such section was not a “chancery case” within the meaning of the Constitution, and that- the General Assembly by legislative enactment could not convert a law case into a chancery case. This statement of the law is so decidedly fundamental that we subscribe to it without hesitation.
 

 Now we are concerned with this question: “If the proceeding provided for in Section 687-2, General Code, is not a ‘chancery case,’ what sort of case is it?”
 

 Disregarding extraordinary remedies, if it is not a
 
 *41
 
 chancery case, it must be a law case. It is not always an easy matter to determine whether a particular proceeding is an action at law or a suit in equity.
 

 There is a paramount issue in every proceeding. All other issues are ancillary. Does the paramount issue present a question of law, or an appeal to the chancellor? Does it require a judgment at law or a decree in equity to right the wrong? What is the relation of the parties and the nature of the relief sought?
 

 The application of these principles put in interrogatory form will be of assistance in determining whether an action is legal or equitable. We agree with counsel that “Equity” is practically impossible of definition, because “the definition of the day does not cover the exigencies of the morrow.” Some one has said: “When we take from the great body of the law a bit of common law and fill the empty niche with a bit of the Roman civil law, equity results.”
 

 It is to be doubted whether such definition is sufficiently comprehensive. Probably the best definition was given rather unconsciously by Sir Henry Sumner Maine in his unexcelled work on Ancient Law. He says that equity is a body of rules existing alongside the original law which it supersedes incidentally by reason of a superior sanctity of its principles.
 

 The courts below held in effect that the proceeding provided for in these sections is in fact a proceeding to dissolve a corporation. It must be admitted that the proceeding may result in dissolution of the association, but we do not reach that provision until we get to Section 687-21, General Code. It may not result in dissolution. It may rehabilitate, as provided by Section 687-23, General Code.
 

 What is the reason and purpose of this act, known as the “Eikenberry Act”? Was it enacted for the benefit of building and loan associations, as such, or
 
 *42
 
 for the benefit of the great army of individuals who have their money tied up in such institutions ?
 

 The state is not interested in the continuation of the life of a corporation when such life must be prolonged at the expense of its citizens, and it was for the purpose of- relieving against such a situation that the Eikenberry Act was passed.
 

 The state gave life to the Mutual Building & Investment Company, invested it with certain powers, and provided a code by which it should live. It was given power to receive, invest and account for the money of the individual. It was likewise given power to formulate and adopt a constitution and by-laws, with the limitation that they be in consonance with the Constitution and laws of the state. The citizen who by investment became a member of this association subscribed to such constitution and by-laws as a matter of law; but by so doing he lost none of his statutory rights.
 

 When we use the term “law” herein, we mean constitutional law; as an alleged law without constitutional sanction is not law.
 

 The state, under the public welfare clause, very properly placed building and loan-associations under state supervision by creating the office of Superintendent of Building and Loan Associations, under the Department of Commerce, Section 154-6, General Code, and thereafter delegating to him by numerous statutory enactments the power of inspection, supervision, and liquidation.
 

 Such superintendent is not only a creature but an arm of the state, with such powers as the state has given him, and no more. It is . the business of the Superintendent of Building and Loan Associations to see that his wards do not run counter to the laws of the state in their treatment of those who intrust their funds to them. He has every means at his command to ascertain the financial condition of any and all build
 
 *43
 
 ing and loan associations within the state. If the reports required by law are honestly made, he has in front of him at all times the evidence by means of which he can'determine the soundness or unsoundness of any institution under his jurisdiction.
 

 Having determined that a concern is in ‘ * an unsound or unsafe condition” or that it is conducting its business in whole or in a substantial part contrary to law or failing to comply therewith, or that its affairs are not being conducted for the best interests of its depositors, shareholders or creditors, he may with the written approval of the Director of Commerce forthwith take possession of its business and property.
 

 Section 687-1, General Code, directs what he shall do in the way of giving notice when he takes charge of a building and loan association.
 

 Section 687-2, General Code, provides for the preferment of charges and their litigation.
 

 Section 687-3, General Code, provides that upon the posting of the notice as required by Section 687-1 by the Superintendent of Building and Loan Associations, the possession of and title to all assets and property of such building and loan association are transferred to, and vested in, the Superintendent of Building and Loan Associations. He becomes the
 
 alter ego
 
 of the particular building and loan association; in other words, a trustee for the benefit of - the creditors of the institution and for the institution itself.
 

 Under the law, he must proceed to cure the ills of the institution if that be possible; and if he cannot cure it, he can kill it.
 

 The association insists that the proceeding herein is a law proceeding for the dissolution of a corporation and for the appointment of a receiver. We must hold that it is neither, notwithstanding dissolution may result therefrom and notwithstanding that the duties of the Superintendent of Building and Loan Associations under the statute are similar to those of a receiver.
 

 
 *44
 
 Counsel have cited no case on all fours with the instant case. They have given us a host of examples of law and equity cases, and, by analogy therefrom, reason that this is an action at law or a suit in equity. These citations help us but little.
 

 If no decisive precedent can be found, it is but natural to cite
 
 cy pres
 
 authorities. However, it is not necessary to resort to the “near as possible” cases when we find eminent authority that bears directly on the case.
 

 The right of the state to regulate, supervise and control building and loan associations must be conceded. The business conducted by a building and loan association is a species of banking, and the state in the exercise of its police power has complete and absolute supervision over it, and the Superintendent of Building and Loan Associations is no less a trustee because he holds such position.
 
 Central Elevator Co.
 
 v.
 
 People, ex rel. Moloney, Atty. Genl.,
 
 174 Ill., 203, 51 N. E., 254, 43 L. R. A., 658.
 

 What is the relation of the Mutual Building
 
 &
 
 Investment Company to its members and shareholders?
 

 “If building and loan associations should keep strictly within the purpose for which they are organized, it is difficult to conceive how they could become insolvent, for their only creditors should be the members or stockholders, and the securities taken should constantly become more ample through the diminution of the indebtedness resulting from the monthly payments of interest and premiums. The history of these associations, however, shows that they have been drawn into speculation, and that their officers, instead of relying solely upon the natural sources of supply of capital to be loaned, have hypothecated their notes and mortgages to secure additional funds for loaning, and, through mismanagement or a shrinkage in the value of the securities, the associations have become insolvent and been placed in the hands of a re
 
 *45
 
 ceiver, or otherwise been rendered unable to proceed, and then the question is presented, What is the result upon the rights and liabilities of the members or stockholders of such insolvency, involving, as it necessarily does, an abandonment of the scheme of the corporate enterprise? Usually, the loans have been made payable at a period.when, according to the expectation of the members, the stock pledged would be equivalent in value to the amount of the loan, and thus the obligation would be canceled without any direct payment of money. The insolvency of a building and loan association is
 
 sui generis.
 
 It is such a condition as reduces the available and collectible assets below the level of the stock already paid in, and makes it impossible for the association to pay back to its stockholders the amount of their contributions. However, it does not consist in the inability to pay its available debts, but merely in the inability to satisfy the demands of its own members. The dissolution of the association necessarily puts an end, not only to its capacity to receive, from time to time, the small payments due from its members, but also to the possibility of their being turned to account, for their benefit, by means of the system of investment and reinvestment peculiar to the building association. The member’s duty to make regular stock payments — a duty incident to his membership only — ceases, for the, stock itself is destroyed, and the membership dies with the association. Not only is this so, but the further fact is established, almost without dissent, that upon the premature dissolution of such an association the advanced members may be compelled to pay forthwith the balances due from them on their securities, although the latter be given in terms only for the payment of installments. Thus it seems that, when the association is defunct, membership ceases, and all contracts must of necessity be set aside. It is upon the theory of the rescission and abrogation of the contracts that equity
 
 *46
 
 steps in and winds np its affairs, and makes a ratable distribution of assets.” 4 Ruling Case Law, 384, Section 39.
 

 As bearing further upon this proposition we find:
 

 “Where the premature winding up or dissolution of the association is the result of its insolvency and the appointment of a receiver, or from such other circumstances as make it clear that the association can no longer continue in business and that the expectations of its members can never be realized, the courts, so far as possible, treat this changed condition of affairs as equivalent to a rescission and as terminating the contract between it and its members.” 4 Ruling Case Law, 387, Section 41;
 
 Curtis
 
 v.
 
 Granite State Provident Assn.,
 
 69 Conn., 6, 36 A., 1023, 61 Am. St. Rep., 17;
 
 Spinney
 
 v.
 
 Chapman,
 
 121 Iowa, 38, 95 N. W., 230, 100 Am. St. Rep., 305;
 
 Preston
 
 v.
 
 Rockey,
 
 185 N. Y., 186, 77 N. E., 1156, 7 Ann. Cas., 315;
 
 Strauss
 
 v.
 
 Carolina Inter-State B. & L. Assn.,
 
 117 N. C., 308, 23 S. E., 450, 30 L. R. A., 693, 53 Am. St. Rep., 585.
 

 Another interesting case that affirms actions of this character to be of equitable cognizance is
 
 Sjoberg
 
 v.
 
 Security Savings & Loan Assn.,
 
 73 Minn., 203, 75 N. W., 1116, 72 Am. St. Rep., 616. See, also,
 
 Barton
 
 v.
 
 Enterprise Loan & Building Assn.,
 
 114 Ind., 226, 16 N. E., 486, 5 Am. St. Rep., 608.
 

 The fact that an equitable remedy is made the subject of statutory enactment in no wise changes its equitable nature. This may be gathered from the reasoning in the case of
 
 Wagner
 
 v.
 
 Armstrong,
 
 93 Ohio St., 443, 113 N. E., 397. It was declared as the law in that case that:
 

 “Appealable cases, therefore, must be such cases as are now recognized as equitable in their nature; and perhaps the better way to express it would be, cases that were recognized as equitable actions before the adoption of the code of civil procedure” (1851).
 

 This ease was followed in
 
 Hummer
 
 v.
 
 Parsons,
 
 111
 
 *47
 
 Ohio St., 595, 146 N. E., 62, which cites 1 Pomeroy on Equity Jurisprudence (4th Ed.), Section 167, page 205.
 

 It will be seen from this case, that mechanics’ liens were unknown to the common law, although they did exist by statutory enactment prior to the adoption of our code of civil procedure. Pomeroy takes no account of our code, but unhesitatingly states that mechanics’ liens come within equity jurisdiction.
 

 Courts of equity have always claimed and exercised exclusive jurisdiction in cases of trusts and over the conduct of those appointed to execute them. A trust is created by statute in the proceeding complained of herein, and the state has plenary power to provide for the administration of such trust by statute. A proceeding questioning the right of the Superintendent of Building and Loan Associations to administer the trust is a chancery proceeding.
 

 When a building and loan association becomes insolvent, it cannot perform its contract with its members and shareholders, and its contract with them is as a matter of law rescinded. The Superintendent of Building and Loan Associations in his bill of particulars alleges that the Mutual Building & Investment Company is in effect unsafe, unsound, that it has been conducting its business in violation of law, and is, in effect, insolvent. All this is denied by the Mutual Building
 
 &
 
 Investment Company, thereby presenting an issue which should be determined by a court of equity.
 

 Under the unquestioned weight of authority we hold that the proceeding provided for in Section 687-2, General Code, is a chancery case, that the Superintendent of Building and Loan Associations had the right to appeal to the Court of Appeals from an adverse judgment in the Court of Common Pleas, and that Section 687-2 is not in contravention of the Constitution of the state of Ohio.
 

 
 *48
 
 The judgment of the Court of Appeals is hereby reversed and this cause is remanded to the Court of Appeals of Cuyahoga county for hearing on appeal.
 

 Judgment reversed and cause remanded.
 

 Weygandt, C. J., Allen, Jones, Matthias, Beyes and Zimmerman, JJ., concur.