By the Court.
 

 Is the respondent engaged in the business of a bond investment company within the purview of Sections 697 to 709, General Code? The first of these sections consists of the following definition :
 

 “Every corporation, partnership or association other than a building and loan association, which places or sells certificates, bonds, debentures or other investment securities of any kind, on the partial payment or installment plan, and every investment guaranty company doing business on the service dividend plan shall be deemed a bond investment company.”
 

 It is conceded that the purpose clause of the respondent’s articles of incorporation empowers it to engage in business as a bond investment company. Likewise it is agreed that at the time the respondent entered into the first of the three above mentioned contracts it possessed the certificate of authority necessary for a bond investment company. This certificate expired December 31, 1932, and the relator in his capacity as supervisor of bond investment companies refused an application for a renewal thereof for the reason that he was “not satisfied that” the respondent had “complied with all the provisions of law.” However, the respondent contends that it no longer needs such certificate because (1) it does not place or sell “certificates, bonds, debentures or other investment securities on the partial payment or installment plan,”
 
 *664
 
 and (2) it is not an investment guaranty company “doing business on tbe service dividend plan.”
 

 A careful study of the involved terms of these contracts discloses three grounds upon which the requested writ must issue.
 

 In the first place the respondent has contracted to place or sell its certificates “on the partial payment or installment plan.” It is expressly provided that “the purchase price” shall be paid “from time to time.” It is of course true that these payments or installments are to be realized from the liquidation of a special reserve fund of assets segregated for that purpose, but this circumstance in no wise alters the fact that the purchase price is to be paid from time to time in installments or payments. It is plain that these are to be made intermittently as the uncertain process of liquidation continues.
 

 In the second place the respondent is an “investment guaranty company doing business on the service dividend plan.” That it is “doing business on the service dividend plan” is apparent from numerous contract obligations as to services to be rendered. It “agrees to use all due diligence, reasonable care and prudence to collect the assets of said First party so delivered to its hands, and to carefully account for any and all loss or shrinkage which may occur in the collection of said assets.” It “agrees that it will segregate all of the property and assets so sold and delivered to it in a special reserve fund entitled ‘Columbia Savings Association Purchase Fund,’ the liquidation of which shall be paid to apply on the purchase price from time to time as herein provided.” It “agrees that it will in good faith endeavor to realize the largest possible amount for the property and assets so transferred and delivered to it.” It “agrees that it will in good faith, endeavor to realize the largest possible amount for the segregated assets and agrees to exercise its sound discretion in the manner and terms of
 
 *665
 
 collection and disposal of such assets, including the renewals, extensions and indulgences, and that the net cash proceeds of any such liquidation shall be retained in said special reserve fund, with the right and power of the Company to invest and reinvest such cash fund in United States Government Bonds, United States Treasury Warrants, or other direct obligations of the Government of the United States, or issues of bonds guaranteed as to payment of principal and interest by the United States Government, or in any loans to the holders of certificates issued pursuant to paragraph 2 hereof.” In its brief the respondent concedes that it “may charge against the property the amount of its necessary expenses and attorney’s fees in the management of the property so purchased, but not to exceed three per cent per annum.” Prom the funds realized as a result of these various services with respect to the association assets, the respondent is required to make certain payments, the unmistakable effect of which is a dividend.
 

 But the respondent insists that even if it is doing business on the service dividend plan, it cannot properly be regarded as an “investment guaranty company.” One difficulty with this contention is that in its contracts the respondent not only employs language importing a guaranty, but it also uses the very word “guarantee” itself. The respondent attempts to explain this by urging that the word as employed in its contracts “is simply another term for the agreement of the respondent to do the things which it has agreed to do,” and is “simply a repetition of the promise to pay the face of the certificate.” However, in view of the manifest astuteness with which these contracts have been drawn, it is not” a little difficult to believe that surplusage of any sort was permitted to creep in, or that any words were employed except in their usual sense, although this court is of course agreed with the contention of the respondent that the
 
 *666
 
 mere label applied by parties to a contract is not conclusive of its legal nature. Under the circumstances it is not necessary to comment upon the other language of guaranty appearing in the contracts.
 

 The third ground upon which this writ must be allowed is that these contracts attempt to provide a device for the private dissolution and liquidation of these savings and loan companies. That this device is in reality of this nature is demonstrated with such language as “First party desires to discontinue the savings and loan business heretofore conducted, and for that purpose to pay off its creditors and depositors and to cease and desist from active conduct of any business operations,” “the Association is desirous of surrendering its corporate franchise and dissolving” and “the savings and loan company is desirous of surrendering its corporate franchise and dissolving.” The state has exercised its right to preempt this field.
 
 State, ex rel. Bettman, Atty. Genl.,
 
 v.
 
 Court of Common Pleas of Franklin County, 124
 
 Ohio St., 269, 178 N. E., 258;
 
 Warner, Supt. of Bldg. & Loan Associations,
 
 v.
 
 Mutual Building & Investment Co.,
 
 128 Ohio St., 37, 190 N. E., 143.
 

 Writ allowed.
 

 Weygandt, O. J., Stephenson, Jones, Matthias, Day and Zimmerman, JJ., concur.
 

 Williams, J., not participating.