ALLEN, ADMR., ET AL., APPELLANTS, *v.* SHAKER HEIGHTS
SAVINGS ASSN., APPELLEE.

(No. 18189—Decided July 23, 1941.)

*Mr. Robert A. Good* and *Mr. Paul Sogg,* for appellants.

*Mr. Alexander Mintz,* for appellee.

MATTHEWS, P. J. This is an appeal on questions of law from a judgment for the defendant rendered by the Court of Common Pleas of Cuyahoga county.

The plaintiffs alleged in their petition that the defendant was a banking corporation under the laws of Ohio and that plaintiffs made an "arrangement" with defendant in 1922, whereby plaintiffs made deposits

aggregating $2,775.09 with defendant during succeeding years, for which amount and their share of the earnings, determined by an accounting of the defendant corporation, they prayed judgment.

The defendant denied that it was a banking corporation, and affirmatively alleged that it was organized under the building and loan laws of this state. It also denied that the plaintiffs had opened a deposit account, and averred by way of explanation that the plaintiffs had subscribed for stock and received from the defendant a stock account book in which were recorded the payments and dividends of such stock.

By way of affirmative defense, the defendant alleged that in 1934 the state Superintendent of Building and Loan Associations, pursuant to law, served a notice of rehabilitation and reorganization upon it after finding that its affairs were in an unsound and unsafe condition, and ordered it to proceed forthwith to rehabilitate or reorganize, as provided in Sections 687-21a, 687-21b to 687-21d, both inclusive, and 693-1, General Code; and that pursuant to Section 687-21a, the superintendent suspended its powers and prohibited it from paying withdrawals of stock or of stock credits and from paying dividends, and required it to submit to him a plan for rehabilitation and reorganization, as provided by law.

The defendant also alleged that, in response to this order, it adopted, at a meeting duly called, a plan of reorganization by a vote of ninety per cent of the stockholders. By this plan, it was provided that all the stock of the corporation should be permanent and non-withdrawable, and that the stockholders should receive for each $100 paid in on the stock a certificate, fully paid and permanent, for $40 par value, and that the reserve created by the reduction of the capital stock should be used to offset losses then ascertained according to law. The defendant alleged that this plan was approved by the state Superintendent of Building

and Loan Associations and declared operative in accordance with the applicable statute. The defendant then alleged that the plaintiffs at no time objected to this plan or demanded in writing the fair cash value of their stock, and that by reason thereof they are bound by the plan and precluded from relief.

By way of cross-petition, the defendant prayed for judgment for a balance due on the plaintiffs' stock computed in accordance with the plan of reorganization, but as no appeal was taken from the judgment for the plaintiffs on the cross-petition, no further notice need be taken of that phase of the case.

At the trial, the facts were stipulated substantially as alleged by the defendant. The book showing the credits or payments was introduced, as were the stock certificates which were prepared and held by the defendant, but never delivered to the plaintiffs.

On the back of the book given to the plaintiffs by the defendant in which to keep a record of payments or deposits is the legend, "Stock Department," and at the top of the page is the statement, "No. Shares, 40, Monthly Payments of $20." The entries in the book show that dividends were credited semi-annually up to and including July 1, 1931. In the rear of the book is a blank assignment of shares of stock for the convenience of the holder. The book also contained quotations from the defendant's constitution and by-laws, and among others section 23 of article V, the important part of which is as follows:

"Members and depositors whose stock or deposits are not pledged to this company may, as a general rule, upon written application to the secretary, withdraw all or any part of their credits or deposits, at any time, without previous notice. But to protect the interests of depositors and borrowers and avoid sacrifice of securities, notice of withdrawal may at any time be required, not to exceed sixty days, and the liability to pay further dues, and the right to dividends on

stock credits and interest on special deposits shall cease with any application to withdraw. All persons withdrawing shall be entitled to receive the amount of all credits at the time of the application to withdraw, less any member's share of the company's loss in excess of the 'reserve' fund.''

The certificates of stock were in the usual form of building association certificates and recited that the plaintiffs had paid the par value of one share and were entitled to membership, and that twenty shares were reserved for them subject to payment at the stipulated rate per month in accordance with the association's constitution and by-laws, and the subscription of the member. It should be said here that there were two transactions totaling forty shares, but as they were identical, there is no occasion for treating them separately or of making further mention of the fact.

After agreeing on the facts, the parties disagreed *in toto* as to their legal significance. The defendant contended that the plaintiffs were stockholders or stock subscribers and that their rights were to be determined by the law applicable to stockholders on the reorganization of corporations, and as the plaintiffs had failed to demand in writing the fair cash value of their stock, they were bound by the reorganization, and not entitled to recover in this action. The plaintiffs took the position that they were not stockholders or stock subscribers, and that they were entitled to the rights of creditors against the defendant corporation, and, further, that these rights could not be affected by a reorganization under laws passed after the relation of creditor or stockholder had been created.

As already noted, the trial court found in favor of the defendant and the parties have taken the same position in this court as they took in the trial court.

Now the defendant had the power to engage in two transactions that, at least superficially, bore a strong resemblance. One was to accept deposits and thereby

create the relation of debtor and creditor, as authorized by Sections 9648 and 9652, General Code. The other was to accept subscriptions to withdrawable stock payable in installments, as authorized by Sections 9645 and 9651, General Code. The factual dispute in this case is as to the category in which to place this transaction.

Our conclusion is that all the evidence shows that it was a stock subscription with the rights and liabilities attaching thereto as defined in the statutes. The plaintiffs had the book labeled "Stock Department" in their possession for years, and it showed plainly that the monthly payments were upon a subscription for forty shares. The provision for regular monthly payments was in itself inconsistent with the thought of a deposit account into which the depositor was at liberty to pay or not at his pleasure. Furthermore, the credits of dividends by name was notice to them and proof to the court that the agreement was for stock and was not a deposit at interest.

So the credits shown in the plaintiffs' book were stock credits subject to withdrawal in accordance with the constitution and by-laws authorized by Section 9651, General Code, and unless and until such credits were withdrawn or re-purchased the stockholders "shall remain stockholders until paid, and shall not become creditors" notwithstanding the fact that they may have applied for withdrawal or re-purchase.

But, it is said that the constitution and by-laws as printed in the credit book expressly authorizes withdrawal. We have quoted this provision. A reading of it discloses that it expresses no unconditional right to withdraw. It clearly provides for withdrawal "as a general rule," which implies a reservation of discretion by the association to be exercised in the light of its condition, and the subsequent provision shows that when the question of withdrawal is raised its

financial condition must be considered to determine the share of any loss to be deducted from the credits.

It is our conclusion that the plaintiffs were stockholders or members having stock credits, and were not creditors and that their rights must be determined on that basis.

All financial institutions—banks, savings societies, building and loan associations—are engaged in a business that intimately concerns the public welfare. They are subject to the regulatory powers of the state, and can engage in the business only at the will of the state and upon such terms as it prescribes within constitutional limitations. That is the police power of the state to which all personal and property rights must yield in the public interest. Whatever contract was entered into between the defendant and its shareholders was subject to this power, and its valid exercise determined the rights of the parties notwithstanding a contrary provision in the contract. The provision in Section 10, Article I of the United States Constitution, prohibiting a state from passing a law impairing the obligation of contracts, is not a limitation upon the exercise of this power. *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U. S., 398, 78 L. Ed., 413, 54 S. Ct., 231.

Of course, its exercise must not be arbitrary or discriminatory. Such an exercise of power under the mere pretense of serving the public welfare would violate the 14th Amendment to the United States Constitution; but there is not and cannot be any issue raised that these statutes offend in that respect.

It is urged that as the statutes authorizing the rehabilitation and reorganization under which the defendant proceeded were enacted after the plaintiffs became stockholders, they could not be made applicable to them, because of constitutional provisions. The constitutional provisions relied on are the "contract clause" and the "due process clause" of the United

States Constitution and similar provisions in the Ohio Constitution. What we have already said forecasts our views on this contention.

In so far as the defendant is a corporation and the plaintiffs are stockholders, the Ohio Constitution has expressly reserved the right to repeal, alter, or amend the charter and thereby change or withdraw entirely its corporate power. Section 2, Article XIII, Constitution; *Allen* v. *Scott, Supt.,* 104 Ohio St., 436, 135 N. E., 683. The fact that a corporation is involved, therefore, does not limit the power of the state to legislate in the public interest.

Now, as the parties contracted with reference to a subject that came within the regulatory power of the state, there was incorporated into their contract an implied term that its provisions were subject to that power. In other words, their contract, like all other property, was subordinate to government. The parties must be held to have contemplated that their rights and remedies might be modified, as they were to protect the public from the consequences of an economic cataclysm.

The case of *Veix* v. *Sixth Ward Bldg. & Loan Assn. of Newark,* 310 U. S., 32, 84 L. Ed., 1061, 60 S. Ct., 792, involved a situation and statutes very similar to the ones in this case and the court held that no constitutional right was violated by the statute. The second paragraph of the syllabus is as follows:

"For the sake of safeguarding the solvency of building and loan associations in the public interest, a state legislature may, independently of emergency and consistently with the contract clause of the Constitution, restrict the rights of certificate holders, existing under statutory regulations in force when they acquired their certificates, to withdraw or recover by suit the amounts of their certificates."

And by the same token of safeguarding the public

interest, such legislation complies with the due process guaranteed by the 14th Amendment.

As the reorganization of the defendant was in conformity to the statute and the plaintiffs failed to pursue their right under the statute to have the fair cash value of their stock determined they are bound by the reorganization, and have no cause of action to recover the money paid on their stock.

We find no Ohio case inconsistent with our conclusion. The case of *Pyper* v. *Mutual Home & Savings Assn.*, 27 Ohio Law Abs., 97, 35 N. E. (2d), 736; *Gall* v. *Central Trust Co.*, 57 Ohio App., 168, 12 N. E. (2d), 782, and *Fourth & Central Trust Co.* v. *Rowe, Admr.*, 122 Ohio St., 1, 170 N. E., 439, relied on by the appellants, are inapplicable. The question of the right of a dissenting stockholder upon reorganization was not involved. *Goodisson* v. *North American Securities Co.*, 40 Ohio App., 85, 178 N. E., 29, did relate to the rights arising upon the sale or consolidation of corporations, but the corporation was not a building and loan association, and the plaintiff did not occupy the status of a stockholder, whereas, in this case we have found that under Section 9651, General Code, and the constitution and by-laws of the defendant, the plaintiffs were stockholders and their rights were fixed by that status.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

Ross and HAMILTON, JJ., concur.

MATTHEWS, P. J., Ross and HAMILTON, JJ., of the First Appellate District, sitting by designation in the Eighth Appellate District.