IN RE LIQUIDATION OF VALLEYWOOD SAVINGS & LOAN ASSOCIATION.

(No. C-880083—Decided July 12, 1989.)

*Taft, Stettinius & Hollister, Lawrence D. Walker* and *Susan E. Wheatley,* for appellee First National Bank of Louisville.

*Frost & Jacobs* and *Gerald L. Baldwin,* for appellee Central Trust Company, N.A.

*Porter, Wright, Morris & Arthur, Mark E. Elsener, Kathleen McDonald O'Malley* and *Sophia Papandreas Tjotjos,* for appellant Connie J. Harris, Superintendent.

GORMAN, J. The appellant, Connie J. Harris, is Superintendent of the Ohio Division of Savings and Loan Associations ("Superintendent") and liquidator of the insolvent Valleywood Savings and Loan Association ("Valleywood"). She appeals from an order of the trial court dissolving an injunction which prohibited the appellee, the Central Trust Company, N.A. ("Central Trust"), from making payment to First National Bank of Louisville ("FNB") under Central

Trust's irrevocable standby letter of credit. In her single assignment of error the Superintendent contends that the trial court erroneously granted FNB's motion to dissolve the injunction against Central Trust by: (1) failing to consider her claim under R.C. 1305.13(B) (UCC 5-114) that FNB presented fraudulent documents for payment under the standby letter of credit, and (2) applying an incorrect standard of fraud to her action under R.C. 1305.13(B). This assignment is not well-taken.

In 1985, Valleywood, a chartered savings and loan association, purchased the stock of two Pennsylvania corporations from Thomas A. Evans and Aubrey W. Gladstone for $20,000,000. To secure a part of the performance under their agreement, Valleywood obtained an irrevocable standby letter of credit in the sum of $3,000,000 from Central Trust, naming Evans and Gladstone as the beneficiaries. As security for the letter of credit Valleywood pledged as collateral to Central Trust a certificate of deposit and certain commercial and residential mortgages.

On October 22, 1985, Valleywood entered into an amended agreement with Evans and Gladstone which called for the substitution of Valleywood's mortgage portfolio income with $3,000,000 in cash payments to Evans and Gladstone payable as follows:

| February 3, 1986 | $475,000 |
| February 2, 1987 | $975,000 |
| February 1, 1988 | $975,000 |
| February 1, 1989 | $575,000 |

The irrevocable standby letter of credit was available to be drawn upon in the event Valleywood failed to pay any installment within twenty days after notice and upon presentation of the proper documents to Central Trust by the beneficiaries.

On the same date as their amended agreement with Valleywood, Evans and Gladstone assigned all rights under that agreement as well as the standby letter of credit to FNB as part of their own separate loan arrangement. After it made its first payment under the amended agreement, Valleywood and Central Trust agreed to substitute the pledged collateral securing the standby letter of credit. Pursuant to this agreement, Valleywood's mortgages were replaced with Valleywood certificates of deposit in the sum of $2,525,000.

On June 12, 1986, during the Ohio savings and loan crisis, the Superintendent took possession of Valleywood's business and property (as R.C. 1157.02 provides in the case of an insolvent savings and loan association). When Central Trust advised that FNB was about to draw on the standby letter of credit, the Superintendent obtained the injunction in question from the common pleas court. Upon FNB's motion to dissolve the injunction, Judge Kraft, in a well-reasoned memorandum decision, found that the standby letter of credit was neither an asset of Valleywood nor the subject of a fraudulent transaction or of fraud warranting the injunctive relief provided for in R.C. 1305.13(B)(2). Upon the trial court's refusal to reconsider its judgment, the Superintendent filed her notice of appeal.[1]

## I

Two days after oral argument,

---

[1] The trial court ordered the Superintendent to post a $110,000 supersedeas bond as a condition of a stay upon appeal, but the bond was not posted. Pursuant to Civ. R. 62(C), the Superintendent, as a state officer, was entitled to a stay as a matter of right, but this issue was not raised at any stage of this appeal. See *State, ex rel. Ocasek,* v. *Riley* (1978), 54 Ohio St. 2d 488, 8 O.O. 3d 466, 377 N.E. 2d 792.

FNB moved to dismiss this appeal as moot because it had drawn the remaining balance due under the standby letter of credit. Although payment ordinarily renders any issue moot and requires dismissal for lack of jurisdiction, an exception arises when the issue is one of sufficient public interest. *State, ex rel. Rudes, v. Rofkar* (1984), 15 Ohio St. 3d 69, 15 OBR 163, 472 N.E. 2d 354; *Ruprecht v. Cincinnati* (1979), 64 Ohio App. 2d 90, 18 O.O. 3d 60, 411 N.E. 2d 504.

The insolvency of Valleywood as a deposit guaranty association resulted from the collapse of the Ohio Deposit Guarantee Fund ("ODGF"), which itself was triggered by the failure of Home State Savings Bank. On March 13, 1985, by Am. Sub. H.B. No. 492, the legislature, declaring an emergency, amended R.C. 1157.01(A) and 1157.02 authorizing appointment of a conservator and procedures for the liquidation of insolvent deposit guaranty associations. *State, ex rel. Celeste, v. Smith* (1985), 17 Ohio St. 3d 163, 17 OBR 364, 478 N.E. 2d 763; *Roberts Dev. Corp. v. Harris* (1987), 36 Ohio App. 3d 111, 521 N.E. 2d 517.

The legislature's decision to protect the deposit guaranty association as well as its depositors and creditors, and the state's commitment to assume certain losses of ODGF are indicative of a public interest and the need to determine if the Superintendent's liquidation powers provided in R.C. 1157.02 are superior to the rights of parties to letters of credit provided in R.C. 1305.13 (UCC 5-114). Therefore, FNB's motion to dismiss is overruled.

## II

As a preface, the nature and purpose of letters of credit and the source of the Superintendent's power are crucial to the issue. The subject has been discussed frequently by many scholars and judges. Of note are *Cromwell* v. *Commerce & Energy Bank* (La. App. 1984), 450 So. 2d 1, affirmed in part and reversed in part (La. 1985), 464 So. 2d 721; *Colorado Natl. Bank* v. *Bd. of Cty. Commrs.* (Colo. 1981), 634 P. 2d 32; Note, Letters of Credit and "Fraud in the Transaction" (1986), 60 Tul. L. Rev. 1088; Note, Letters of Credit: Injunction as a Remedy for Fraud in U.C.C. Section 5-114 (1979), 63 Minn. L. Rev. 487; Squillante, Letter of Credit: A Discourse (1980), 85 Comm. L.J. 220; Annotation (1971), 35 A.L.R. 3d 1404; Annotation (1983), 25 A.L.R. 4th 239.

The commercial letter of credit evolved as a means to finance the sale of goods in international trade. The typical commercial letter of credit is a bank's (the issuer's, R.C. 1305.01[A][3]) written promise upon request of its customer (R.C. 1305.01[A][7]) to honor a draft or other demand for payment if the person drawing the draft or making demand (beneficiary, R.C. 1305.01 [A][4]) complies with the written conditions expressed therein (R.C. 1305.01[A][1], UCC 5-103[a]). In return the bank's customer secures the letter of credit by pledging collateral and promising to reimburse the issuing bank. The issuing bank's promise to pay is independent of the buyer's payment or the seller's performance pursuant to their underlying agreement. Therefore, in the case of a letter of credit, the issuing bank's credit is substituted for the undetermined or uncertain credit of the bank's customer. R.C. 1305.13 (Official Comment 1 to UCC 5-114); See *Richards Elec. Supply Co., Inc. v. First Natl. Bank of Harrison* (July 22, 1981), Hamilton App. No. C-800418, unreported.

Widely used in today's banking business is the standby letter of credit — also governed by R.C. 1305.01 *et seq.* and Article Five of the Uniform Commercial Code. *Cromwell* v. *Commerce*

& Energy Bank, supra, at 729. It differs from a commercial letter of credit in that the beneficiary cannot draw on the standby letter of credit unless the customer defaults on its underlying agreement with the beneficiary. It is similar to a guarantee, but unlike a guarantor who is secondarily liable, the obligation of an issuer of a standby letter of credit is primary. Accordingly, the issuer cannot rely on its customer's defenses against the beneficiary. R.C. 1305.13 (Official Comment 1 to UCC 5-114).

The standby letter of credit assumes three separate agreements: (1) the business arrangement reflected in the underlying agreement between the bank's customer and the beneficiary; (2) the agreement between the issuing bank and its customer in which the bank agrees to issue the letter of credit and the customer agrees to reimburse the bank for any payments thereunder; and (3) the agreement between the issuing bank and the beneficiary set forth in writing in the letter of credit in which the bank is obligated to honor any drafts or demands that comply. *Colorado Natl. Bank v. Bd. of Cty. Commrs., supra,* at 36.

## III

The Superintendent's powers have been conferred because Ohio exercised its power to preempt the Bankruptcy Act by establishing an exclusive method for the possession and liquidation of insolvent savings and loan associations under authority of Sections 109(b) and (d), Title 11, U.S. Code; *Hunter Sav. Assn.* v. *Jurgensen* (Aug. 31, 1988), Hamilton App. No. C-870724, unreported. The Superintendent in reality becomes a trustee for the benefit of the savings and loan association and its creditors. *Warner* v. *Mut. Bldg. & Investment Co.* (1934), 128 Ohio St. 37, 43, 190 N.E. 143, 147. By R.C. 1157.02, the Superintendent is expressly empowered to take possession of the *"business and property"* of an insolvent savings and loan association, and after posting the required notice, *"all assets"* pursuant to R.C. 1157.04 are transferred by operation of law to the Superintendent as the liquidator.

## IV

The trial court correctly concluded that since it was not an asset of Valleywood, the Superintendent was not empowered under R.C. 1157.04 to take possession of Central Trust's standby letter of credit. The reason is that the separate obligation of the beneficiary under its standby letter of credit requires the issuing bank to honor the draft or demand from its own assets and not from its customer's assets. *In re Val Decker Packing Co.* (S.D. Ohio 1986), 61 Bankr. 831; *In re W. L. Mead* (N.D. Ohio 1984), 42 Bankr. 57. Under this arrangement Valleywood's pledged collateral is the asset subject to possession by the Superintendent.

## V

Although Central Trust's standby letter of credit is neither an asset nor a liability of Valleywood, the Superintendent maintains that it was subject to recovery because the documents presented by FNB were fraudulent. This argument is based upon the premise that Ohio's liquidation statutes are implicitly incorporated into the amended agreement underlying Central Trust's standby letter of credit under the following language of *Allen* v. *Shaker Heights Sav. Assn.* (1941), 68 Ohio App. 445, 451, 23 O.O. 155, 157, 39 N.E. 2d 747, 751:

"Now, as the parties contracted with reference to a subject that came within the regulatory power of the state, *there was incorporated into their contract an implied term that its provi-*

*sions were subject to that power.* \* \* \* The parties must be held to have contemplated that their rights and remedies might be modified, as they were to protect the public from the consequences of an economic cataclysm." (Emphasis added.)

The Superintendent contends that Valleywood's obligation to pay never arose because of the automatic stay of any attachment, garnishment or execution which resulted when the Superintendent, as liquidator, took control of Valleywood's business and property as provided in R.C. 1157.02 through 1157.04. FNB's presentment documents were, accordingly, false and, therefore, fraudulent when they certified that payments were "past due and owing" under the underlying amended agreement between Valleywood and Evans and Gladstone.[2]

To support her argument, the Superintendent emphasizes *Hunter Sav. Assn.* v. *Jurgensen, supra,* which stated at 9-10:

"*The Ohio statutory scheme prevails over the terms of all contracts, leases and other agreements of Ohio savings and loan associations, because otherwise the power of the state to regulate these financial institutions would be impermissibly compromised.* The incorporation of a statutory scheme into a \* \* \* [contract] between private parties may be a legal fiction, but it is a necessary one for the full exercise of the state's power to regulate. \* \* \*" (Emphasis added.)

The Superintendent argues that the trial court addressed only the issue of fraud in the transaction (under R.C. 1305.13), but failed to consider the issue of fraudulent presentment. The fallacy of this imaginative argument is that R.C. 1157.04 does not establish a stay as to all Valleywood transactions but merely provides that the effect is to "bar any attachment, garnishment, execution, or other proceedings against such association or its assets or liabilities."

R.C. Chapter 1157 does not negate the fact that an overdue obligation of an insolvent person is still "due and payable." As stated in *Kesler* v. *Dept. of Pub. Safety of Utah* (1962), 369 U.S. 153, 170, " 'the discharge destroys the remedy but not the indebtedness.' "

When FNB's presentment documents so certified, the statement was simply not false. The *Jurgensen* case, *supra,* relied upon by the Superintendent, does not stand for the proposition that an obligation of an insolvent savings and loan under a lease is not due and payable to the landlord. Rather, it holds that as an asset of the insolvent savings and loan, timely filing of a claim by the landlord is required under R.C. Chapter 1157.

Absent an express contingency in the underlying agreement (see *Itek Corp.* v. *First Natl. Bank* [C.A. 1, 1984], 730 F. 2d 19), or presentment documents falsely certifying that the customer was in default or a demand for payment was made (see *Emery-Waterhouse Co.* v. *Rhode Island Hosp. Trust Natl. Bank* [C.A. 1, 1985], 757 F. 2d 399), a claim of false or fraudulent presentment of documents is not available as a remedy under R.C. 1305.13(B)(2) to enjoin the issuing bank's payment to the beneficiary under a standby letter of credit.

In determining if the statutory powers of the liquidators are superior to the statutory rights under a standby letter of credit, any rule must necessarily focus upon the integrity of the standby letter of credit and the

---

[2] Because a standby letter of credit is not a contract, the Superintendent's assertion that R.C. 1157.02 through 1157.04 are implicitly incorporated into the parties' agreement must be directed to the terms of the underlying amended agreement. See *In re Val Decker Packing Co., supra.*

banking industry's reliance upon it as a financing tool under Article 5 of the Uniform Commercial Code. Clearly, the parties chose a standby letter of credit because the beneficiary, relying on the express statutory language in R.C. Chapter 1305, wanted to avoid shifting the loss from Valleywood to the beneficiary.

Having found that FNB's presentment documents did not contain false statements rendering them fraudulent, it is unnecessary to address the Superintendent's second issue relating to the standard of fraud to be applied under R.C. 1305.13 as asserted in her first assignment of error.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., and UTZ, J., concur.