## SEEKAMP et v WARNER et

Ohio Appeals, 2nd Dist, Montgomery Co

Decided June 27, 1935

C. J. Mattern, Dayton, in propria persona.

Albert J. Dwyer, Dayton, in propria persona

John W. Bricker, Attorney General, Columbus, Charles H. Jones, Columbus, and

Herbert D. Mills, Dayton, for defendant, Paul A. Warner.

R. A. Argabright, Dayton, amicus curiae.

MIDDLETON, PJ. BLOSSER and McCURDY, JJ, (4th Dist) sitting.

## OPINION

By McCURDY, J.

This action was begun in the Court of Common Pleas of Montgomery County, Ohio, on November 8, 1933, by C. J. Mattern, an attorney, who on leave first obtained filed on behalf of the plaintiffs and all other parties similarly situated his petition in the Court of Common Pleas against the Superintendent of Building and Loan Associations and the Miami Savings & Loan Company of Dayton, Ohio.

In the petition it was alleged on behalf of one of the plaintiffs that prior to May, 1930, this plaintiff had become a depositor, and that during May, 1930, this deposit was changed to a running stock account, without the knowledge of the plaintiff, without obtaining any subscription to stock from the plaintiff, and it was also alleged, on behalf of the other plaintiff, that her deposit was transferred to a running stock account during May, 1930, and that a subscription was thereafter obtained from her by the company to running stock, through fraud, artifice and trick. Among other things, through the prayer of the petition, the appointment of a referee was sought, and a reformation of the books and records to conform to the facts was prayed for, along with judgment for the amounts found due and owing to the plaintiffs as special savings depositors. Two demurrers were filed to this petition by the Superintendent of Building and Loan Associations, which were overruled, after which the superintendent filed an answer in the nature of a general denial.

Albert J. Dwyer was appointed referee by the court, and the matter was referred to him for the taking of testimony and the filing of a report thereon. The referee's report was duly filed and was approved by the Court of Common Pleas on July 26, 1934, after which the defendants filed a motion for a new trial, which was overruled on July 31, 1934, at which time the Common Pleas Court entered a final decree ordering the Superintendent of Building and Loan Associations and the Miami Savings & Loan Company to correct and reform the books and records of the company so as to invest all persons designated (being a list of approximately 3,700 names) with all the rights and interests which they had as savings depositors in and to the assets of the company. This decree was permitted to stand by the defendants without the institution of an appeal or error proceeding.

Thereafter, at the next term of court, on November 13, 1934, an application was filed for the allowance of an attorney fee to C. J. Mattern, the attorney for the plaintiffs, and at the same time an entry making the allowance was filed allowing ten per cent of the amount of which each plaintiff and each person similarly situated would be credited as a depositor, and ordering the superintendent to deduct such ten per cent from the account of each and every one of the persons named in the final decree of the court, and to issue and deliver to the attorney, C. J. Mattern, a certificate of claim totaling the sums allowed to him. The amount of the deposits involved in the order of the court totaled approximately $1,060,000, on which the ten per cent ordered as an attorney fee would approximate the sum of $106,000, to be reduced to a certificate of claim. At the time of the application and order for an attorney fee the court allowed and fixed the fee of the referee, Albert J. Dwyer, in the sum of $15,000. These allowances were made without notice to the superintendent, and without an opportunity to be heard afforded to the superintendent. Thereafter the superintendent filed a motion to vacate the order fixing the attorney fee, and also a motion to vacate the order fixing the referee's compensation, both of which were overruled, as was the motion for rehearing filed thereon; and, after the overruling of motions for a new trial and for a rehearing, the matters of the allowance of attorney fees and the fixing of the referee's compensation were brought within the jurisdiction of the Court of Appeals through an appeal thereon prosecuted by the Superintendent of Building and Loan Associations, and is now before this Court of Appeals.

The record discloses that prior to the institution of the instant case in the Court of Common Pleas, and the granting of leave to file the petition in that court, the superintendent, on April 18, 1933, assumed control of the Miami Savings & Loan Company for liquidation, and filed an application in the Court of Common Pleas on September 1, 1933, setting forth the facts that special and "D" deposit accounts were transferred by the officials of the building and loan during May, 1930, to running stock accounts, and that many of these depositors were asking for an allowance of their claims as special deposits, and not running stock accounts, and seeking credit as set-offs against mortgage indebtedness, etc., wherein the superintendent requested the order and direction of the court as to the manner in which he should exercise his power and discretion in relation thereto and in all other cases of a similar nature which might arise in a liquidation proceeding. After the hearing of this application the court rendered a written opinion on September 18, 1933, and, thereafter, on July 31, 1934, entered the following judgment:

"It is, therefore, the finding and decree of this court that the above and all of the holders of deposit books, either special or 'D' deposits, on the 31st day of May, 1930, and to the extent that they may still have to their credit as of the 18th day of April, 1933, all or a portion of said credits or deposits in said Miami Savings & Loan Company, unless they have either subscribed for stock covering these deposits in Miami Savings & Loan Company, or have become a member by the doing of some act which will estop them from denying that they are stockholding members of said Miami Savings & Loan Company, and said superintendent is hereby ordered to allow said deposits, as such, upon the filing by the holder thereof as of the 18th day of April, 1933, an affidavit setting up his claim and stating therein that he at no time consented to the transfer of his deposit account to running stock, and that he did not knowingly and voluntarily participate as a member in such corporation in any manner."

It is apparent that the subject-matter of this application of the superintendent, just referred to, and of the petition in the instant case under consideration, is the same, and that the judgment rendered pursuant to this application and that rendered in the instant case have the same practical effect.

It becomes necessary in determining whether or not the order allowing the attorney fee in question and the order fixing the referee's compensation in question are proper, to examine the sections of the General Code relating to the superintendent of Building and Loan Associations, as amended by the Eikenberry Act. The attorney, C. J. Mattern, and the referee, Albert J. Dwyer, are urging the theory that this legislation will not permit the superintendent to seek and gain the relief prayed for in the instant case, and that consequently this suit was made necessary. The principal claim of the superintendent is that this legislation provides for the superintendent to secure the same relief granted in this case, and confers upon him full power to grant the same; that he can invoke the jurisdiction of the court for instructions in so doing, and that the procedure is exclusive and the Court of Common Pleas was without jurisdiction in the instant case.

At the outset of our consideration of this matter, however, we must direct our attention to the motion made in this court by C. J. Mattern, that the appeal be dismissed for the reason that the defendants are not the real parties in interest and have no interest in the outcome of this case, urging that it can only be the persons who were actually benefited by the order of the Court of Common Pleas that have a right to be heard, or who have a right to complain. We must overrule this motion. It has been decided in **Warner, Supt. of Bldg. & Loan Assn's. v Mutual Building & Investment Co., 128 Oh St, 37, 190 NE, 143**, as follows:

"Under the laws of Ohio, the superintendent of Building and Loan Associations is constituted a trustee for the benefit of the association, its depositors, shareholders and creditors."

In such a capacity it becomes the Superintendent's duty, through the Liquidation of a building and loan association, to see to it that all classes of persons interested therein secure the maximum amount to which they may be entitled and that the expenses of liquidation be kept as low as possible in order that this may be accomplished. Being trustee of these persons affected in the instant case, the superintendent certainly has the right to appeal in any matter which affects their interests, and has a direct monetary bearing on the amount to which they may become entitled from the Miami Savings & Loan Company. It is clear to this court that not only the

261

parties involved in the reformation of the books of the company, but all other parties, depositors, shareholders and creditors, are affected by the order of the court below in relation to the attorney fees and the referee's compensation in so far as this order might have the effect of reducing the amount to which the persons set out in the judgment of the court below would be entitled, who might in turn be also involved as a debtor to the building and loan in other transactions where the superintendent could rely upon their credit as a set-off. Accordingly, the appeal will not be dismissed.

A careful study of all of the legislation relative to the Superintendent of Building and Loan Associations convinces us that the powers of liquidation have been properly conferred upon him, and the procedure has been made exclusive in that the legislation sets up definite procedure to be followed by all parties interested in a building and loan association properly within the control of the superintendent for the purposes of liquidation.

Sec 687-1, GC, sets forth the procedure upon the superintendent's taking possession, and provides for calling upon all persons who have claims to present them, and it will be noted that there is no limitation placed upon the nature of the claim or the manner in which it arises.

Sec 687-3, GC, provides for an absolute bar to any attachment, garnishment, execution, or other legal proceedings, against such building and loan association, or its assets and property, or its liabilities, when the title to assets and property is vested in the superintendent.

Sec 687-5, GC, provides for the superintendent to prepare a record of the liabilities from the books of the association and the facts as ascertained by him.

Sec 687-6, GC, provides for the rejection of claims filed and the manner in which the aggrieved party may maintain suit thereon.

Sec 687-7, GC, provides for the making of objections to claims not rejected by the superintendent and the court procedure thereon.

Sec 687-11, GC, provides a right for the superintendent to apply to the Court of Common Pleas for instructions in case of doubt or difficulty, and further provides that the order of the court thereon shall not be deemed a final order so that thereafter, as further provided in this section of law, any aggrieved party may maintain an independent suit by reason of such order. This section further provides:

"The superintendent shall not be directed or restrained in the exercise of his powers or discretion otherwise than in a suit in equity in which it shall be alleged and found that he has exceeded or abused such power and discretion."

A consideration of these sections of law, together with the entire act of which they are a part, shows clearly that the Legislature provided adequate and exclusive means for the liquidation of building and loan associations in the state of Ohio and for the maintenance of law suits in relation thereto. Clearly the purpose of this act is not only to accomplish uniformity of liquidation proceedings, together with the simplification and acceleration thereof, but likewise to prevent a multiplicity of suits and give the superintendent the opportunity to use his powers of discretion without being interfered with by court action until his conclusions have been reached; after which in every conceivable instance any party considering himself to have been aggrieved by the action of the trustee, the superintendent, is assured his day in court.

The entire spirit of the act is to secure to all interested persons, through a trustee created by the state, a protection of their rights and interests, with full representation, leaving them free to appeal to the courts of the state only after they have deemed themselves to be aggrieved through the action of the trustee. We can not conceive of this being an infringement upon the court's equitable jurisdiction or any limitation thereof. On the contrary, certain principles of equity have become the subject of legislation.

Clothed with full powers of liquidation the superintendent properly filed his application number six, referred to above, in the Court of Common Pleas, under and by authority of §687-11, GC, which likewise clothed the court with full jurisdiction to entertain such an action and render a decision thereon.

The situation presented to this court is a practical illustration of the great wisdom of this legislation. Here we have before us a suit instituted for the purpose of securing to a large group of persons, approximately 3,700 in number, certain so-called advantages, for which, if personally maintained, they would be put to considerable expense. The court was also caused great and unnecessary labor, since prior to the institution of this suit the superintendent proceeded under authority outlined in the statute to secure the same rights for these

same persons, and did secure them. At the time this suit was instituted these same persons had not been denied the relief prayed for. On the contrary, their trustee, the superintendent, created by the state, was in the process of doing the very things to which the instant suit was directed. In the event any right existed whereby the instant case could be maintained it is apparent on the face of the entire record that these parties, set forth by name in the order of the court below, secured no greater benefits thereby than were secured and in the process of being secured under the application theretofore filed and maintained by the superintendent. It should be apparent from this situation alone that the court could not under any theory charge them with attorney fees and the expense of a referee.

Viewed from another angle we are unable to understand, even disregarding the matter pending before the Common Pleas Court prior to the filing of the instant case how these persons can be charged with an attorney fee on a claimed matter of benefits when no showing of the financial status of the building and loan association in question was made. In event the assets of this institution should prove sufficient to pay stockholders, depositors and creditors, then these persons would have secured no benefit whatever; and while it may be true that these assets will not even be sufficient to pay depositors' claims in full, yet this matter can not be guessed at in arriving at a concluson that these persons were benefited, or if benefited, the extent to which they were benefited. An allowance of attorney fees could not be properly made without a definite shewing of the financial status of the building and loan association in order that the court might know the exact estimate of the benefits secured under this action for these people.

It becomes unnecessary, however, to rely upon these two angles of the case when we direct our attention to the procedure set up by the statutes of Ohio in relation to this building and loan association under the control of the Superintendent of Building and Loan Associations. We are convinced that these statutes set forth procedure which is exclusive, and that the courts of Ohio can only secure and maintain jurisdiction under the terms of these statutes. It should be clear under the mandatory terms of §687-11, GC, quoted above, that the instant case could not have been maintained, and that the court below had no jurisdiction thereof, in the absence of an allegation and finding that the superintend-

ent had exceeded or abused his power and discretion in relation to the matters set forth in the petition. On the contrary, the court attempted to direct the superintendent in the exercise of his powers and discretion contrary to the provision of §687-11, GC.. Moreover, none of these parties could have the right to maintain an action without first filing his claim and having it rejected, and then, by provision of §687-6, GC, and only under this provision, could he have maintained an action in the Court of Common Pleas wherein such court would have proper jurisdiction. For these reasons the Court of Common Pleas was without jurisdiction in the instant case, and being without jurisdiction to entertain the proceedings themselves that court is likewise without jurisdiction to grant attorney fees arising therefrom, or to fix a compensation for the referee.

Much has been contended in this case relative to estoppel growing out of the action of the superintendent in filing lists and reports under the instant case. Such action is without any effect and can not be relied upon since it is not in compliance with §687-1, paragraph 3, GC, requiring that all papers in connection with the liquidation shall be filed and disposed of in the original proceeding filed with the clerk of the Court of Common Pleas and entitled "In the Matter of the Liquidation of the Miami Savings and Loan Company of Dayton, Ohio."

Accordingly the motion filed on behalf of the Superintendent of Building and Loan Associations of Ohio to vacate the entry fixing attorney fees for C. J. Mattern will be allowed, and the motion filed on behalf of the Superintendent of Building and Loan Associations of Ohio to vacate the entry fixing the compensation of the referee, Albert J. Dwyer, will be allowed.

Decree accordingly.

MIDDLETON, PJ, and BLOSSER, J, concur.