[Cite as *State v. Pyles*, 2018-Ohio-4034.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee, | : | Case No. 17CA3790 |
| v. | : | |
| | | DECISION AND |
| JACOB B. PYLES, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Thomas R. Schiff, Hochwalt & Schiff, LLC, Kettering, Ohio, for appellant.

Shane A. Tieman, Interim Scioto County Prosecuting Attorney, and Jay Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

Hoover, P.J.

{¶1}    Defendant-appellant, Jacob B. Pyles ("Pyles"), appeals the judgment of the Scioto County Court of Common Pleas, which convicted him of felonious assault and intimidation of attorney, victim, or witness in a criminal case and sentenced him to ten years of incarceration. On appeal, Pyles contends that: (1) the State failed to establish venue with respect to the intimidation charge; (2) the trial court erred in denying his motion for jury view; (3) trial counsel provided ineffective assistance;[1] (4); the trial court erred in allowing an unadmitted exhibit to be published to the jury; (5) the State engaged in prosecutorial misconduct when it asked the victim to identify her prior unsworn statement; (6) the trial court erred in admitting an unauthenticated exhibit; and (7) his convictions are based upon insufficient evidence and/or are against the manifest weight of the evidence.

_____
[1] Pyles is represented by different counsel on appeal.

{¶2}    Conversely, the State argues that: (1) venue was proven beyond a reasonable doubt with regard to the intimidation charge; (2) the trial court did not abuse its discretion in denying Pyles's motion for jury view; (3) Pyles failed to demonstrate that the result of the trial would have been different but for trial counsel's errors; (4) the trial court did not err in allowing State's Exhibit 6 to be published to the jury and, if it did, said error was harmless; (5) asking the victim to identify and read her unsworn statement was a harmless error; (6) the trial court did not abuse its discretion in admitting properly authenticated text messages; and (7) Pyles's convictions are based upon sufficient evidence and are not against the manifest weight of the evidence.

{¶3}    For the following reasons, we find no merit in Pyles's assignments of error. Consequently, we affirm the judgment of the trial court.

### I. Facts and Procedural History

{¶4}    On or about October 13, 2016, Pyles allegedly assaulted Leah Ashley Adkins ("Adkins") at the address where the couple resided in Portsmouth, Ohio.On the date of the incident, three other individuals, Caroline Archey, Harold Murphy, and Todd Murphy, and seven dogs resided in the home. Adkins testified that she and Pyles "got into an argument over Facebook." According to Adkins, Pyles got mad and slapped her "a couple times." Adkins yelled for help until Pyles hit her in the face, causing her to lose consciousness.

{¶5}    Adkins sought emergency medical treatment at King's Daughters Urgent Care in Portsmouth, Ohio. According to the initial encounter report by Luke Porginski, R.N., dated October 13, 2016, Adkins told hospital personnel that she was "jumped" by two females. Specifically, Adkins stated that she was hit with a closed fist to the left lateral eyebrow and suffered loss of consciousness. Matthew Harper, M.D., ("Dr. Harper"), a radiologist, remotely

viewed Adkins's CT scans and rendered a preliminary report for the attending physician's use. In his report, Dr. Harper found Adkins had suffered mildly comminuted fractures of the medial wall of the left orbit. After conducting a physical examination and reviewing the CT scan results, the attending physician, Frank Prasnal, M.D. ("Dr. Prasnal"), diagnosed Adkins with a fracture of the left orbit, laceration of the eyebrow, and a cerebral concussion. Adkins received stitches for the laceration but did not require surgery and was discharged the same day.

{¶6}    After being released from the hospital, Pyles picked her up and brought her back to the residence. The next day, Adkins took her things, left the residence, and stayed at her family camper and later at a friend's house in Franklin Furnace.

{¶7}    On October 29, 2016, Adkins and her mother visited the Portsmouth Police Department, where they spoke to Portsmouth Police Officer Michael Queen ("Officer Queen") about filing a protection order. In her voluntary statement, Adkins reported that Pyles slapped her and then knocked her out during an argument at their residence in Portsmouth, Ohio. In addition to completing a medical release, Adkins provided Officer Queen with a record of the messages she allegedly received from Pyles via text and Facebook Messenger between October 15, 2016 and October 30, 2016.[2]

{¶8}    Due to the seriousness of the injuries and the content of the text messages, Officer Queen ultimately spoke with Sergeant Benjamin Fugitt about filing criminal charges against Pyles. The incident report, which Officer Queen completed, stated that the alleged assault occurred on October 12, 2016. Officer Queen later testified that his "fat fingers" might have accidentally entered the wrong date.

---

[2] Officer Queen testified that he received the screenshots via email. From the record, it appears that Adkins emailed Officer Queen screenshots of text messages she received after visiting the Police Department on October 29, 2016.

{¶9}  On December 20, 2016, the Scioto County Grand Jury issued a two-count indictment charging Pyles with Count 1: Felonious Assault, in violation of R.C. 2903.11, a felony of the second degree, and Count 2: Intimidation of Attorney, Victim, or Witness in a Criminal Case, in violation of R.C. 2921.04, a felony of the third degree. Pyles was arraigned on the charges in December 2016 and entered not guilty pleas.

{¶10}  A trial was held over the course of three days beginning on January 23, 2017. Before the start of the first day of trial, the trial court ruled on multiple motions. The court denied Pyles's motion to exclude evidence and motion for jury view and granted the State's motion to amend indictment. Pursuant to Crim.R. 7(D), Count 1 of the indictment—which originally stated that the felonious assault occurred on or about October 12, 2013—was amended to "on or about October 13, 2016."

{¶11}  After deliberations, the jury subsequently returned verdicts of guilty on both counts. Thereafter, the trial court sentenced Pyles to seven years of incarceration on Count 1: Felonious Assault, and thirty-six months of incarceration on Count 2: Intimidation of Victim in a Criminal Case, with said sentences to run consecutively.

## II. Assignments of Error

{¶12}  On appeal, Pyles assigns the following errors for our review:

Assignment of Error I:

> Ohio Constitution Article 1, Section 10 states that an accused is entitled to a trial by an impartial jury of the county in which the offense is alleged to have been committed.

Assignment of Error II:

> Defendant was denied his right to a fair trial as a result of the court denying his request for a jury view.

Assignment of Error III:

Counsel for Defendant was ineffective in failing to request a continuance as a result of the State's amendment of Count 1 of the Indictment on the day of trial and his failure to request a transcript of the Grand Jury testimony as a result of said amendment and his failure to do so constitutes ineffective assistance of counsel. [sic]

Assignment of Error IV:

Counsel for Defendant provided ineffective assistance by allowing witnesses Prasnal, Harper, Porginski, to testify without the State laying the proper foundation. [sic]

Assignment of Error V:

The Court committed reversible error by allowing an exhibit which had not been admitted into evidence to be published to the jury and, more significantly, allowed the jury to have said exhibit during deliberations.

Assignment of Error VI:

Counsel for Defendant was ineffective and, but for counsel's ineffective assistance, the result of the trial would have been different.

Assignment of Error VII:

The State was allowed to introduce Adkins' written statement in the absence of prior impeachment of her by Defendant.

Assignment of Error VIII:

By the Court allowing text messages which Adkins could not authenticate as having been authored by or sent by Pyles, the Court committed reversible error.

Assignment of Error IX:

Defendant's convictions were based upon insufficient evidence and were against the manifest weight of the evidence.

### III. Law and Analysis

### A. Venue Was Properly Established in Scioto County

{¶13} In his first assignment of error, Pyles contends that, as an accused, he was entitled to a trial by an impartial jury of the county in which his offenses were alleged to have been

committed. In his brief, Pyles specifically argues that the State failed to establish venue for Count 2: Intimidation of Attorney, Victim, or Witness in a Criminal Case. According to Pyles, the State never asked Adkins to establish venue with respect to the text messages that Pyles allegedly sent Adkins and which form the basis for the intimidation charge. The State argues that, based upon all facts and circumstances, venue was proven beyond a reasonable doubt.

{¶14}   "Venue refers to the appropriate place of a criminal prosecution within the state of Ohio." *State v. Miller*, 4th Dist. Vinton No. 03CA586, 2004-Ohio-2873, ¶ 8, citing *State v. Williams*, 53 Ohio App.3d 1, 5, 557 N.E.2d 818 (10th Dist.1988). Article I, Section 10 of the Ohio Constitution provides an accused with the right to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Section 2901 of the Revised Code, which contains the statutory foundation for venue, states in pertinent part that: "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and * * * in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). When the offense involves a telecommunications device, like a cellular phone, the statute provides that: "* * * the offender may be tried * * * in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a * * * telecommunications device * * *." R.C. 2901.12(I)(1).

{¶15}   "Venue is not a material element of any offense charged." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.2d 1023, ¶ 143. Nevertheless, venue is a fact that must be proven beyond a reasonable doubt in a criminal prosecution unless the defendant waives the issue. *Id.*, citing *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). Express evidence to establish venue is not necessary, if, from all of the facts and circumstances in the case, it is established beyond a reasonable doubt that the crime was committed in the county and

state named in the indictment. *State v. Wright*, 2016-Ohio-7654, 74 N.E.3d 695, ¶ 26 (4th Dist.), citing *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 19. Consequently, "[v]enue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." *State v. Chintalapalli,* 88 Ohio St.3d 43, 45, 723 N.E.2d 111 (2000), citing *State v. Draggo,* 65 Ohio St.2d 88, 92, 418 N.E.2d 1343 (1981).

{¶16}   After reviewing the evidence, we find that the jury could have found that the intimidation offense was committed in Scioto County. The record reflects that Adkins was present in Scioto County on October 29, 2016, when she visited the Portsmouth Police Department. According to the record, Adkins brought her phone into the police department and used the device to email copies of the text messages to Officer Queen. On that date, Adkins was still receiving text messages from Pyles. This evidence demonstrates, beyond a reasonable doubt, that Scioto County was the proper venue for Count 2: Intimidation of Attorney, Victim, or Witness in a Criminal Case.

{¶17}   Accordingly, we overrule Pyles's first assignment of error.

### B. The Trial Court Did Not Abuse Its Discretion in Denying Jury View

{¶18}   In his second assignment of error, Pyles contends that the trial court abused its discretion in denying his motion for a jury view. Pyles alleges that a view of the scene was necessary in order for the jurors to understand the construction of the house and whether the alleged assault could be heard from downstairs. The State argues that the trial court did not abuse its discretion in denying Pyles's motion for jury view because the presentation of photographic evidence was sufficient to allow the jury to determine the facts and weigh the credibility of the witnesses.

{¶19} The purpose of a jury view of the property is not evidentiary but rather to give the jury a chance to apply the evidence offered at trial. *See generally* 42 Ohio Jurisprudence 3d, Evidence and Witnesses, Section 8, at 216 (1983). The grant or denial of a jury view is within the sound discretion of the trial court, and there are no particular requirements as to when the trial court should grant a jury view. *Calloway v. Maxwell,* 2 Ohio St.2d 128, 206 N.E.2d 912 (1965); *State v. Fowler*, 4th Dist. Scioto No. 1973, 1992 WL 368829, at *2 (Dec. 7, 1992). Nonetheless, R.C. 2945.16 states:

> When it is proper for the jurors to have a view of the place at which a material
>
> fact occurred, the trial court may order them to be conducted in a body, under the
>
> charge of the sheriff or other officer, to such place, which shall be shown to them
>
> by a person designated by the court. * * *

"Thus, the facts of each case determine whether the court abused its discretion." *State v. Taylor*, 4th Dist. Adams No. 95CA601, 1996 WL 205593, at *2 (Apr. 24, 1996), citing *State v. Montalvo*, 47 Ohio App.2d 296, 297, 353 N.E.2d 855 (7th Dist.1974).

{¶20} The decision of the trial court will not be reversed absent an abuse of discretion. The term "abuse of discretion" implies that the court's ruling was "unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Additionally, when applying the abuse of discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶21} On the day of the incident, five individuals, including Adkins, and seven dogs resided at the address in question. By the time the trial began, the number of residents and dogs in the home had changed. Since the situation in the home had changed, it is uncertain whether a

view of the home would have helped the jury understand the evidence. *See Suiter v. Walker*, 4th Dist. Lawrence No. 91CA13, 1992 WL 174702, at *2 (Jul. 2, 1992). Thus, we cannot find that the decision by the trial court was so arbitrary, unconscionable, or unreasonable as to constitute reversible error.

{¶22} Accordingly, we overrule Pyles's second assignment of error.

### C. Trial Counsel Did Not Deny Pyles of His Right to Effective Assistance of Counsel

{¶23} In Pyles's third, fourth, and sixth assignments of error, he contends that trial counsel provided ineffective assistance. First, we will address Pyles's third assignment of error before addressing Pyles's fourth and sixth assignments of error in tandem.

### 1. Failure to Request Continuance and Transcript of Grand Jury Testimony Did Not Amount to Ineffective Assistance of Counsel

{¶24} In his third assignment of error, Pyles contends that his trial counsel provided ineffective assistance by failing to request a continuance and a transcript of the relevant grand jury testimony after the State amended the indictment on the day of trial. Specifically, the amendment changed the date of Count 1 of the indictment from "on or about October 12, 2016" to "on or about October 13, 2016." The State argues that Pyles failed to demonstrate that (1) a reasonable probability exists that but for counsel's errors, the result of the trial would have been different; or (2) trial counsel's performance was deficient.

{¶25} Under both the United States and Ohio Constitutions, a fair trial is guaranteed in all criminal prosecutions. One of the elements to a fair trial is the right to have the assistance of counsel. The Supreme Court set forth the standard to be used in judging whether counsel has been ineffective and whether a criminal defendant has been prejudiced thereby. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must

show that counsel's representation fell below an objective standard of reasonableness."

*Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). The court recognized

that there are "countless ways to provide effective assistance in any given case." *Id.* at 689.

Therefore, the court stated that "[j]udicial scrutiny of counsel's performance must be highly

deferential." *Id.* In addition, "[b]ecause of the difficulties inherent in making the evaluation, a

court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance * * *." *Id.*

{¶26} Thus, the Ohio Supreme Court has held that "[c]ounsel's performance will not be

deemed ineffective unless and until counsel's performance is proved to have fallen below an

objective standard of reasonable representation and, in addition, prejudice arises from counsel's

performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the

syllabus, citing *State v. Lytle*, 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623 (1976). To warrant

reversal, " '[t]he defendant must show that there is a reasonable probability that, but for

counsel's * * * errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142,

quoting *Strickland* at 694.

{¶27} Crim.R. 7(D) states, in pertinent part, that:

The court may at any time before, during, or after a trial amend the indictment,

information, complaint, or bill of particulars, in respect to any defect,

imperfection, or omission in form or substance, or of any variance with the

evidence, provided no change is made in the name or identity of the crime

charged. If any amendment is made to the substance of the indictment,

information, or complaint, or to cure a variance between the indictment,

information, or complaint and the proof, the defendant is entitled to * * * a

reasonable continuance, unless it clearly appears from the whole proceedings that

the defendant has not been misled or prejudiced by the defect or variance in

respect to which the amendment is made, or that the defendant's rights will be

fully protected by proceeding with the trial * * *.

This Court has previously held that amendments that change " 'only the date on which the

offense occurred * * * [do] not charge a new or different offense, nor * * * change the substance

of the offense.' " *State v. Evans,* 4th Dist. Scioto No. 08CA3268, 2010-Ohio-2554, ¶ 35,

quoting *State v. Quivey,* 4th Dist. Meigs No. 04CA8, 2005-Ohio-5540, ¶ 28.

{¶28}  Additionally, Crim.R. 6(E) provides, in part:

A grand juror, prosecuting attorney, interpreter, stenographer, operator of a

recording device, or typist who transcribes recorded testimony, may disclose

matters occurring before the grand jury, other than the deliberations of a grand

jury or the vote of a grand juror, but may disclose such matters only when so

directed by the court preliminary to or in connection with a judicial proceeding, or

when permitted by the court at the request of the defendant upon a showing that

grounds may exist for a motion to dismiss the indictment because of matters

occurring before the grand jury.

"Although grand jury proceedings are secret, * * * an accused may inspect grand jury transcripts

if the ends of justice require it and if he can show that he has a particularized need for them that

outweighs the reasons for secrecy." *State ex rel. Collins v. O'Farrell*, 61 Ohio St.3d 142, 143,

573 N.E.2d 113 (1991), citing *State v. Patterson*, 28 Ohio St.2d 181, 277 N.E.2d 201

(1971), paragraph three of the syllabus; *State v. Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982 (1981), paragraph two of the syllabus.

{¶29} Whether the defendant has shown a particularized need for disclosure is a question of fact. A particularized need will be found when the surrounding circumstances show a probability "that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *Greer* at paragraph three of the syllabus. However, a trial court may reasonably find that no particularized need is shown "[w]hen a defendant 'speculates that the grand jury testimony might have contained material evidence or might have aided his cross-examination by revealing contradictions[.]' " *State v. Mack*, 73 Ohio St.3d 502, 508, 653 N.E.2d 329 (1995), quoting *State v. Webb*, 70 Ohio St.3d 325, 337, 638 N.E.2d 1023 (1994).

{¶30} Here, Pyles argues that had trial counsel requested a continuance and a transcript of the relevant grand jury testimony, the outcome of the trial would have been different. We do not find his argument persuasive. The record suggests that the trial counsel was aware that the State intended to file a motion to amend the indictment. The trial court references this knowledge during a bench conference:

> THE COURT: Okay. Now, everybody knew this was happening, but the State's
>
> Motion to Change from October 12th, 2016 to on or about October 13th, 2016,
>
> you knew about it. Okay with you?
>
> [TRIAL COUNSEL]: Yeah.

Additionally, Pyles fails to establish a particularized need upon which trial counsel would have been entitled to a transcript of the grand jury testimony. Consequently, we cannot find that trial

counsel's failure to request a continuance and a transcript of the relevant grand jury testimony prejudiced Pyles.

{¶31} Accordingly, we overrule Pyles's third assignment of error.

**2. Failure to Object to Testimony Did Not Amount to Ineffective Assistance of Counsel**

{¶32} We address Pyles's fourth and sixth assignments of error in tandem. In his fourth assignment of error, Pyles asserts that, since the State allegedly failed to lay the proper foundation for Adkins's medical records, trial counsel should have objected to the testimony of Dr. Prasnal, Dr. Harper, and Nurse Porginski. According to Pyles, the State should have asked Dr. Prasnal and Nurse Porginski to identify Adkins using a photograph. Pyles does not include any case law in support of his argument. In his sixth assignment of error, Pyles presents a nonexclusive list of trial testimony to which counsel should have objected and contends that these alleged errors amounted to ineffective assistance of counsel.

{¶33} In response to Pyles's fourth assignment of error, the State argues that it was sound trial strategy for counsel to cross-examine the medical personnel instead of objecting to the admission of Adkins's medical records. In response to Pyles's sixth assignment of error, the State again argues—in regards to Pyles's nonexclusive list of trial testimony—that trial counsel's decision to not object is easily attributable to sound trial strategy. In regards to both assignments of error, the State alleges that Pyles failed to demonstrate that (1) a reasonable probability exists that but for counsel's errors, the result of the trial would have been different; or (2) trial counsel's performance was deficient.

{¶34} Again, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Bradley*, 42 Ohio

St.3d at paragraph two of the syllabus, 538 N.E.2d 373, citing *Lytle*, 48 Ohio St.2d at 396-397, 358 N.E.2d 623. To warrant reversal, " '[t]he defendant must show that there is a reasonable probability that, but for counsel's * * * errors, the result of the proceeding would have been different.' " *Bradley* at 142, quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶35}  Mere failure to make objections, which seem appropriate after the fact, does not establish prejudicial error as a deprivation of the Sixth Amendment right to counsel. *State v. Williams*, 3d Dist. Marion No. 9-07-61, 2008-Ohio-3887, ¶ 70; *State v. Gray*, 10th Dist. Franklin Nos. 99AP-666, 99AP-667, 2000 WL 311926, at *6 (Mar. 28, 2000); *State v. Grider*, 8th Dist. Cuyahoga, No. 75720, 2000 WL 146544, at *13 (Feb. 10, 2000). Failure by trial counsel to object to certain statements does not establish ineffective assistance where such failure might be considered sound trial strategy. *See State v. Hummell*, 6th Dist. Sandusky No. S-81-15, 1981 WL 5875, at *4 (Dec. 18, 1981), citing *Whitsell v. Perini*, 419 F.2d 95, 96 (6th Cir. 1969); *see also State v. Jarrell*, 2017-Ohio-520, 85 N.E.3d 175, ¶ 54 (4th Dist.), fn.3 ("[C]ourts have consistently held that an appellate court 'will not question matters of trial strategy.' "), quoting *State v. Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶ 35.

{¶36}  Here, Pyles has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Even when viewed cumulatively, alleged errors constituting ineffective assistance of counsel did not show a reasonable probability that the result would have been different but for counsel's errors. Therefore, we cannot find that trial counsel's alleged errors denied Pyles of his right to effective assistance of counsel.

{¶37}  Accordingly, we overrule Pyles's fourth and sixth assignments of error.

**D. The Trial Court Did Not Commit Reversible Error By Publishing Adkins's Statement to the Jury**

{¶38}   In his fifth assignment of error, Pyles contends that the trial court committed reversible error by publishing State's Exhibit 6—the unsworn statement Officer Queen took from Adkins on October 29, 2016—to the jury. According to Pyles, the State never moved for admission of State's Exhibit 6 nor did the trial court admit the exhibit *sua sponte*. The State argues that the trial court did not err in allowing State's Exhibit 6 to be published to the jury and, if it did, said error was harmless.

{¶39}   Pyles is mistaken. During Adkins's direct examination, the State did move to admit State's Exhibit 6. The trial court effectively admitted the exhibit during the following exchange:

Q. Okay. Let me hand you what's been marked as State's Exhibit 6 and ask you if you recognize that document?

A. Yes.

Q. What is that?

A. That's a statement of what happened the day of the incident.

Q. Okay. And whose statement is this?

A. It's mine.

Q. Okay. How do you recognize it?

A. Because it has—it's all in my writing and my signature. [sic]

Q. Okay.

MS. HUTCHINSON: Move to admit.

THE COURT: It's already been admitted.

By stating that State's Exhibit 6 was already admitted, the court, in effect, admitted the exhibit into evidence. *See State v. Quarles*, 2d Dist. Clark No. 2014CA72, 2015-Ohio-3050, ¶ 48, fn.1; *Fulton Thompson Tractor Sales, Inc. v. Smith*, 4th Dist. Meigs No. 344, 1984 WL 3492, *3 (May 25, 1984), fn.2. Furthermore, the exhibit appears in the transcript, whereas exhibits that were not admitted, such as State's Exhibit 20, do not.

{¶40}  Accordingly, Pyles's fifth assignment of error is not well taken.

### E. The State's Use of Adkins's Statement Did Not Constitute Plain Error

{¶41}  In his seventh assignment of error, Pyles contends that it was impermissible for the State to have Adkins identify her own prior unsworn statement before Pyles had a chance to impeach. Additionally, Pyles contends that his trial counsel provided ineffective assistance by failing to object to Adkins's unsworn statement being published to the jury. The State argues that, even if it were improper for Adkins to identify and read unsworn statement, the error was harmless because the information had already been presented into evidence.

{¶42}  Generally, in the absence of an objection, a reviewing court will not consider an alleged error unless it rises to the level of plain error. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 151, citing *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. To constitute plain error, it must be evident in the record that the error occurred and, but for the error, the outcome of the trial would have been otherwise. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. Moreover, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus.

{¶43} The prosecution may reveal the contents of a prior unsworn statement to refresh the witness's recollection, impeach the witness, or admit the statement as evidence under one of the exceptions or exclusions to the hearsay rule. *See* Evid.R. 612; Evid.R. 801(D); Evid.R. 803; Evid.R. 804; *State v. Knott*, 4th Dist. Athens No. 03CA30, 2004-Ohio-5745, ¶ 15. After Adkins testified at length on direct examination as to the events leading up to and following the incident, the State asked Adkins to identify her prior unsworn statement and, after the document was admitted into evidence, asked her to read it aloud to the jury.

{¶44} It does not appear from the record that the State's actions were proper under the Ohio Rules of Evidence. However, we determine that no plain error occurred. Although Adkins's testimony did contain inadmissible hearsay, Pyles has failed to demonstrate how he was prejudiced by the testimony. The information contained in Adkins's statement had already been presented into evidence in Adkins's earlier testimony.

{¶45} We also reject Pyles's claim that trial counsel was ineffective. To warrant reversal, " '[t]he defendant must show that there is a reasonable probability that, but for counsel's * * * errors, the result of the proceeding would have been different.' " *Bradley*, 42 Ohio St.3d at 142, 538 N.E.2d 373, quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. Here, Pyles fails to support his argument. " 'It is not the duty of [an appellate] court to search the record for evidence to support an appellant's argument as to alleged error.' " *Lias v. Beekman*, 10th Dist. Franklin No. 06AP1134, 2007-Ohio-5737, ¶ 6, quoting *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 94 (10th Dist.).

{¶46} Accordingly, we overrule Pyles's seventh assignment of error.

**F. The Trial Court Did Not Abuse Its Discretion by Admitting Text Messages into Evidence**

{¶47}   In his eighth assignment of error, Pyles contends that the text messages Pyles allegedly sent to Adkins between October 15, 2016 and October 30, 2016 were not properly authenticated. According to Pyles, Adkins failed to testify to any significant degree of certainty that Pyles authored or sent any portion of the text messages. The State argues that the trial court did not abuse its discretion in admitting the text message evidence because Adkins had properly authenticated the exhibits.

{¶48}   We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989). The requirement of authentication or identification as a condition precedent to admissibility is satisfied by introducing "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity. *State v. Easter,* 75 Ohio App.3d 22, 25, 598 N.E.2d 845 (4th Dist.1991). Instead, the State only needs to demonstrate a "reasonable likelihood" that the evidence is authentic. *See State v. Vermillion*, 4th Dist. Athens No. 15CA17, 2016-Ohio-1295, ¶ 14; *State v. Aliff*, 4th Dist. Lawrence No. 99CA8, 2000 WL 378370, *7 (Apr. 12, 2000).

{¶49}   Courts have held that photographs of text messages sent from a defendant are not hearsay, but instead qualify as a party-opponent admission under Evid.R. 801(D)(2) as long as the statements are properly authenticated. *See State v. Bickerstaff*, 11th Dist. Ashtabula No. 2014-A-0054, 2015-Ohio-4014, ¶ 15; *State v. Shaw*, 2013-Ohio-5292, 4 N.E.2d 406, ¶ 43 (7th Dist.). "Generally, in cases involving electronic print media, i.e., texts, instant messaging, and e-mails, the photographs taken of the print media or the printouts of those conversations are authenticated, introduced, and received into evidence through the testimony of the recipient of

the messages." *State v. Davis*, 2016-Ohio-1166, 61 N.E.3d 650, ¶ 19 (12th Dist.), citing *State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, ¶ 75 (8th Dist.). *See also State v. Thompson*, 2d Dist. Montgomery No. 26954, 2016-Ohio-7521, ¶ 59. Therefore, statements from text messages are properly authenticated when the recipient of the messages identifies the messages as coming from the defendant.

{¶50}  According to the record, Adkins received messages from a Facebook account and texts from three different cell phone numbers. At trial, the State asked Adkins to authenticate a photocopy of each conversation, labeled Exhibits 14 through 17. Adkins identified Exhibit 14 as a photocopy of text messages sent to her cell phone from Pyles's "government cell phone." Next, Adkins identified Exhibit 16 as a photocopy of messages she received on Facebook Messenger from Pyles. Third, Adkins identified Exhibit 15, a photocopy of text messages Pyles sent from a second cell phone. Adkins testified that she knew Pyles sent the texts because the sender identified himself as Pyles and sent "selfies." Adkins identified the sender of each of these exhibits with certainty.

{¶51}  Of the four, Adkins only stumbled over authenticating Exhibit 17, a photocopy of text messages Pyles allegedly sent from a third cell phone:

Q. Ashley, I think we were talking about the last set of messages that you would have received, and you—explain to the jury what that was again.

A. They were from what I thought was a texting app he had downloaded. He was first talking in the third person about, "If you drop the charges you'll never hear from Jacob again", then he switches in the next paragraph and says, "My mom and grandma are behind me a hundred percent", and those started on the 29th of October.

Q. Okay. Let me hand you what's been marked as State's Exhibit 17, and ask you again if you recognize that?

A. Yes.

Q. Okay. And are those the messages you were just explaining to the jury?

A. Yes

* * *

Q. Who are they from?

A. The first—some of them talk in the third person as if—and they're talking about Jacob, and then—

THE COURT: Now, ma'am, that's not the question.

A. I don't know who the first ones are, and then he talks about my grandma and mom are behind me, so I assume that's Jacob there.

* * *

Q. Can you explain how you know who was sending the messages?

A. In the content it says think like—he says, "I'm going to, I loved you", and things that make him—and that talks about things that he would know, Jacob, being he. [sic]

Q. Okay. Is there a discussion about what happened and this incident that we're here about today?

A. Um—

Q. That relates to this incident

A. It talks about dropping the charges and—but that was before he starts talking as if—as if it was himself, Jacob.

Q. Okay.

A. It walks about dropping the charges. How they'd pay me $500 if I did so.

Q. Okay. I think that's—

MS. HUTCHINSON: I'd move to admit. There's no other way to—

THE COURT: I'll admit them. Continuing objection.

A. Okay.

THE COURT: Goes to the weight.

{¶52}  Although Adkins was not familiar with the phone number, she testified that she was able to identify Pyles as the sender due to the content of the messages. After reviewing the messages, we find this testimony sufficient to support the finding that the text messages were sent by Pyles. Moreover, since Adkins properly authenticated each photocopy, we find that the trial court did not abuse its discretion in admitting Exhibits 14 through 17 into evidence.

{¶53}  This Court finds that the text message evidence goes to the weight of the evidence, not to the admissibility of said evidence. Accordingly, Pyles's eighth assignment of error is overruled.

### G. Pyles's Convictions Were Based Upon Sufficient Evidence

{¶54}  In his ninth assignment of error, Pyles contends, in part, that his convictions were based upon insufficient evidence. After highlighting contradictions between the State's witnesses, Pyles alleges that no rational trier of fact could have found all essential elements of the crimes beyond a reasonable doubt. The State argues that sufficient evidence was presented to support both verdicts in this matter.

{¶55}  When determining whether the record contains sufficient evidence to support a conviction, we must determine "whether such evidence, if believed, would convince the average

mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991) (superseded on other grounds), citing *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978); *see also State v. Bange,* 4th Dist. Ross No. 10CA3160, 2011-Ohio-378, ¶ 13. The relevant inquiry is not how we might interpret the evidence, but rather, "after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at 273.

**1. Pyles's Conviction for Felonious Assault Was Based on Sufficient Evidence**

{¶56} Felonious assault occurs when a person knowingly causes serious physical harm to another. R.C. 2903.11(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. * * *." R.C. 2901.22(B). R.C. 2901.01(A)(5) defines "serious physical harm" as any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶57} Here, we find that substantial evidence supports Pyles's conviction for felonious assault. Adkins testified that, at the time she sought medical treatment, her pain level was a ten out of ten and remained that way for a little over a month. The State corroborated Adkins's pain level through Dr. Prasnal's testimony and by introducing her medical records. Accordingly, the jury could have reasonably concluded, beyond a reasonable doubt, that Adkins suffered serious physical harm.

{¶58} Further, we find that Adkins's testimony and the photocopied text messages, which Adkins authenticated as having been sent by Pyles, constitute substantial evidence that Pyles feloniously assaulted Adkins. Exhibit 15 contains a text message in which Pyles states: "I can change & stop hitting you * * *." Additionally, the severity of Adkins's injuries supports a finding that Pyles acted "knowingly" under the statute. Accordingly, after viewing the evidence in the light most favorable to the prosecution, we find that the jury could have reasonably concluded, beyond a reasonable doubt, that Pyles committed the felonious assault.

### 2. Pyles's Conviction for Intimidation of Victim in a Criminal Case Was Based on Sufficient Evidence

{¶59} Intimidation of an Attorney, Victim, or Witness in a Criminal Case is prohibited under Section 2921.04 of the Revised Code, which states that:

(B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

> (1) The victim of a crime or delinquent act in the filing or prosecution of criminal
>
> charges or a delinquent child action or proceeding[.]

R.C. 2921.04(B)(1). An "unlawful threat" must be "more than just a threat, i.e., more than just a communication to a person that particular negative consequences will follow should the person not act as the communicator demands." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 41. Instead, "the statutory language in R.C. 2921.04(B), proscribing intimidation by an 'unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." *Id.* at ¶ 42. Additionally, the statute does not require that the victim actually feel intimidated. *See State v. Serrano*, 2016-Ohio-4691, 69 N.E.3d 87, ¶ 44 (8th Dist.), citing *State v. Thompson*, 7th Dist. Columbiana No. 13CO20, 2014-Ohio-1225, ¶ 16.

{¶60}   Again, we find that substantial evidence supports Pyles's conviction for intimidation of a victim in a criminal case. The photocopied text messages, which Adkins authenticated as having been sent by Pyles, constitute substantial evidence that Pyles committed an unlawful threat of harm. Exhibit 15 includes the following string of text messages from Pyles:

> "Alright. F*** you. I gave you a chance. I'm hitting up everybody I've ever
>
> known. Sh** is gonna [sic] go down! I can't wait to see you begg [sic] & cry just
>
> like you"

> "did when I was beating your a**! You aren't gonna [sic] be able to walk away
>
> from this one though. Both your eyes are gonna [sic] be swelled shut & broke. A
>
> shatter[—]"

"[—]ed nose. No f****** teeth. Broken ribs. F*** it's gonna [sic] be bad! It will

teach you a very big f****** lesson! When somebody says to text back, you do

just"

"that!"

* * *

"Get all the evidence you want & press charges. Like I said they can[—]"

"[—]'t keep me forever! A restraining order is just a piece of paper [emoji]"

"ain't gonna [sic] stop me from getting to you or anybody else. Bet you if"

"I go to jail over this things will be very bad for you[.]"

Accordingly, after viewing the evidence in the light most favorable to the prosecution, we find

that the jury could have reasonably concluded, beyond a reasonable doubt, that Pyles committed

intimidation of victim in a criminal case.

### H. Pyles's Convictions Were Not Against the Manifest Weight of the Evidence

{¶61}  In his ninth assignment of error, Pyles contends that his convictions were against

the manifest weight of the evidence. After highlighting contradictions between the State's

witnesses, Pyles alleges that the jury lost its way in convicting Pyles of felonious assault and

intimidation of a witness in a criminal case. The State argues that the jury had ample competent,

credible evidence upon which to make a finding of guilt beyond a reasonable doubt on both counts at issue.

{¶62} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and all reasonable inferences, and consider the witness credibility. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 151, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2nd Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶63} As the court explained in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21:

> [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * * *

If the evidence is susceptible of more than one construction, the reviewing court is

bound to give it that interpretation which is consistent with the verdict and

judgment, most favorable to sustaining the verdict and judgment.

(Internal quotations omitted.) Thus, an appellate court will leave the issues of weight and

credibility of the evidence to the fact-finder, as long as a rational basis exists in the record for its

decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *State v.*

*Howard*, 4th Dist. Ross No. 07CA2948, 2007–Ohio–6331, ¶ 6 ("We will not intercede as long as

the trier of fact has some factual and rational basis for its determination of credibility and

weight.").

{¶64} "When a court of appeals reverses a judgment of a trial court on the basis that the

verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and

disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387. "The

discretionary power to grant a new trial should be exercised only in the exceptional case in which

evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485

N.E.2d 717 (1st Dist.1983).

{¶65} Here, Pyles does not argue or address whether the State proved each and every

element of the offenses. Instead, he argues that the conflicts in Adkins's testimony should have

created such grave doubt in her credibility that no jury could have found him guilty on either

count in the indictment. Essentially, Pyles's argument amounts to a challenge to the jury's

credibility determinations. However, as previously stated, credibility is generally an issue for the

trier of fact. Additionally, just because the jury apparently resolved Adkins's conflicting

testimony in favor of the prosecution does not mean that Pyles's conviction is against the

manifest weight of the evidence. Further, as set forth above, an appellate court will leave the

issues of weight and credibility of the evidence to the fact-finder, as long as a rational basis

exists in the record for its decision. *Picklesimer* at ¶ 24; *accord Howard* at ¶ 6.

{¶66}  In light of the evidence, we conclude that Pyles's convictions for the above crimes

were not against the manifest weight of the evidence. We cannot say that this is an exceptional

case where the evidence weighs heavily against the convictions, that the trier of fact lost its way,

or that a manifest miscarriage of justice has occurred.

{¶67}  Accordingly, Pyles's ninth assignment of error is overruled.

### IV. Conclusion

{¶68}  Therefore, based upon the foregoing reasons, we hereby affirm the judgment of

the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellee to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellee to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and McFarland, J.: Concur in Judgment and Opinion.


For the Court,


By: _____
    Marie Hoover
    Presiding Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**